UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN ANTONIO GALLARDO CASTRO, also known as "Johnny" | Case No. 21 CR 661<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Government's request that Defendant be removed to the Eastern District of Tennessee to face conspiracy charges under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count One) and 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h) (Count Three) pursuant to an indictment filed on October 26, 2021 ("Indictment"). The only contested issue at this time is identity, and upon the request of the Defendant, an identity hearing was held on November 3, 2021. This case also presents two novel questions of law that the Seventh Circuit has not addressed. The first question is what standard of proof applies in an identity hearing conducted pursuant to Federal Criminal Rule of Procedure 5(c)(3)(D)(ii). The second issue is whether the fact that the defendant has the same name as the person charged in the indictment creates a rebuttable presumption of identity. For the reasons stated below, the Court finds that probable cause is the appropriate standard at an identity hearing on an out-of-district indictment, and that an indictment against an individual with the same name as the Defendant does not establish a rebuttable presumption of identity. Because the Government has satisfied its burden to show probable cause to believe that the Defendant is the same person named in the October 26, 2021 indictment issued in the Eastern District of Tennessee, the Court grants the Government's request to transfer Defendant to the Eastern District of Tennessee.

**BACKGROUND**

On or about October 26, 2021, Juan Antonio Gallardo Castro, also known as "Johnny," was indicted in the Eastern District of Tennessee on charges of conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A) (Count One) and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(h) (Count Three). On October 27, 2021, Defendant was arrested in Chicago, Illinois. On October 28, 2021, he appeared before the Court for an initial removal hearing. During his appearance, Defendant waived his right to a detention hearing without prejudice to reassertion in the charging district but contested identity, claiming that he is not the same person named in the Indictment. Since an indictment has already issued, the only remaining issue before the Court is Defendant's identity. Fed. R. Crim. P. 5(c)(3)(C)-(D); Fed. R. Crim. P. 5.1(a)(2); *Kaley v. United States*, 571 U.S. 320, 329 (2014).

Pursuant to Federal Rule of Criminal Procedure 5(c)(3)(D)(ii), the Court held an identity hearing on November 3, 2021 to determine whether removal of Defendant to the Eastern District of Tennessee would be proper. At the identity hearing, the Government called Thomas Garrison, a Special Agent with the Tennessee Bureau of Investigation and Task Force Officer with the Federal Bureau of Investigation, and James A. Healy, a Task Force Officer with the Drug Enforcement Administration. The Government also offered several exhibits, including the October 26, 2021 arrest warrant for Juan Antonio Gallardo Castro, a/k/a "Johnny," the October 26, 2021 Indictment, a photograph from a U.S. visa record for Juan Antonio Gallardo Castro taken in approximately 2016, a Mexican identification card that included a photograph of the Defendant and listed his name as "Juan Antonio Gallard Castro" that was recovered from Defendant at the

time of his arrest, and Defendant's booking photograph from October 27, 2021. Defendant presented no witnesses or documents at the identity hearing, but cross-examined the Government's witnesses. At the conclusion of the hearing, the Court ordered the Government to file a brief setting forth its position regarding identity by November 12, 2021. Defendant requested and was granted until November 29, 2021 to file his response brief. Having reviewed the evidence submitted at the identity hearing and the briefs and authorities cited by the parties, the Court finds that Defendant is the same person named in the Indictment and arrest warrant.

## **DISCUSSION**

Rule 5 of the Federal Rules of Criminal Procedure governs initial appearances upon an arrest. As Defendant was arrested in a district other than where the offense was allegedly committed, Rule 5(c)(3) provides the procedures that apply. Fed. R. Crim. P. 5(c)(3). Specifically, Rule 5(c)(3) requires a magistrate judge to, among other things, transfer a defendant to the district where the offense was allegedly committed if: (1) the government produces a reliable electronic format of the warrant and (2) "the judge finds that the defendant is the same person named in the indictment . . . or warrant." Fed. R. Crim. P. 5(c)(3)(D). "Rules 5 and 40 guarantee that a defendant will not forcibly be brought to a different state until the government produces a warrant and a judge determines that the defendant is the same person named in the warrant, information, or indictment." *United States v. Vega*, 438 F.3d 801, 803 (7th Cir. 2006).

One of the primary purposes of removal proceedings before transporting a defendant from one federal district to another for trial is to "guard against improvident removals by requiring sufficient grounds therefore." *United States v. Green*, 499 F.2d 538, 540 (D.C. Cir. 1974); *see also* Original Advisory Committee Note 2 to Fed. R. Crim. P. 40 ("The purpose of removal proceedings is to accord safeguards to a defendant against an improvident removal to a distant point for trial.").

These safeguards makes sense both practically and historically. Practically, "transportation of a person to a distant point for trial involves serious consequences." *Toth v. Talbott*, 114 F. Supp. 468, 469 (D.D.C. 1953) (considering removal by court-martial without a hearing) *rev'd on other grounds* 215 F.2d 22 (D.C. Cir. 1954), *rev'd sub nom. United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955). Historically, "[i]t is contrary to the principles of American institutions to remove a person to a distant point for trial without express authority to do so and without appropriate safeguards provided by statute. In fact, one of the grievances of the Colonists that led to the American Revolution was a threat on the part of the British authorities to remove certain persons from the Colonies to the British Isles for trial." *Id*. at 469-70 n. 2 (noting that the "Declaration of Independence in enumerating the grievances against the British Crown specifies: 'transporting us beyond Seas to be tried for pretended offenses.'"). Obviously when a defendant's arrest takes place in same district where the offense was allegedly committed, the situation does not come within the purpose of the rule. Thus, there is no pretrial procedure for identity hearings when a defendant is arrested within the district where the offense was allegedly committed. The procedure is one uniquely tied to out-of-district arrests.

A.     The Standard for Determining Identity Under Rule 5(c)(3)(D)(ii)

In this case, the Government has produced an arrest warrant for an individual named Juan Antonio Gallardo Castro, also known as "Johnny," and the only issue before the Court is the question of identity. At the outset, the Court notes that Rule 5 does not specify the standard which a court should apply when determining whether an arrestee is the person named in an indictment. Likewise, neither the Seventh Circuit nor a court in this district has addressed the standard for determining identity for purposes of removal pursuant to an indictment in a Rule 5(c)(3)(D)(ii) proceeding. The Government cites a Seventh Circuit case decided in 1937, *Trawczynski v. United*

*States*, 89 F.2d 922 (7th Cir. 1937). However, in *Trawczynski*, the Seventh Circuit did not squarely consider the standard applicable in an identity/removal hearing where the sole issue is whether the government has established identity. Instead, when it analyzed the proper procedure in removal proceedings, it analyzed whether from all the evidence probable cause had been shown that the defendant was guilty of the offense charged in the indictment. *Id*. at 923. The defendant argued that the district judge erred by proceeding on the theory that a case of probable cause was established by the indictment in addition to proof of the identity of accused. *Id*. The Seventh Circuit held that in a removal, the government "establishes a prima facie case of probable cause by proof of an indictment which properly charges the defendant with the commission of a crime against the United States, together with proof of identity." *Id*. The *Trawczynski* court continued, however, by stating that "the defendant is entitled to offer any proof otherwise competent with a view of overcoming such prima facie case" and the court will "determine from all the evidence whether probable cause has been shown." *Id*. Significantly, the *Trawczynski* court did not address whether the probable cause standard applies to a preliminary proceeding where the only issue is the identity of the arrestee. Moreover, *Trawczynski* predates Rule 5(c)(3) (and its predecessor Rule 40(b)(3)). In 1944, Rule 40 of the Federal Rules of Criminal Procedure was adopted to govern proceedings for removal, under which "probable cause is established, beyond the purview of judicial review, by the grand jury's return of the indictment." *United States v. Perkins*, 433 F.2d 1182, 1187 (D.C. Cir. 1970); *see* Advisory Committee Note 3 to 1944 adoption of Fed. R. Crim. P. 40 ("[I]n case of an indictment, the grand jury, which is an arm of the court, has already found probable cause. Since the action of the grand jury is not subject to review by a district judge in the district in which the grand jury sits, it seems illogical to permit such review collaterally in a removal proceeding by a judge in another district."). Thus, pursuant to Rule 5.1, no preliminary

5

hearing is required after an indictment. *See* Fed. R. Crim. P. 5.1(a)(2) (stating that preliminary hearing is required "unless . . . the defendant is indicted"). In sum, *Trawczynski* pre-dates Rule 40 and considered the more expansive question of whether probable cause existed to believe that the defendant was guilty of the offense charged. Because *Trawczynski* failed to directly address the question at issue of whether probable cause is the proper standard to be applied at an identity hearing, the Court does not believe it mandates the decision here.

The majority of courts around the country that have considered the issue have held that a probable cause standard applies. *See United States v. Asencio*, 2017 WL 4005636, at *2 (S.D.N.Y. Sept. 12, 2017); *United States v. Saldana-Beltran*, 37 F.Supp.3d 1180, 1186 (S.D. Ca. 2014); *United States v. Antoine*, 796 F.Supp.2d 417, 419-20 (E.D. N.Y. 2011); *United States v. Rodriguez-Torres*, 2014 WL 2320081, *2 (S.D.N.Y. May 30, 2014); *McCrimmon v. United States*, 2009 WL 4347452, at *1 (N.D. Miss. Nov. 24, 2009). In this case, Defendant has not objected to the application of the probable cause standard to the identity determination. Doc. 17 at 3.

The Court finds that probable cause is the correct standard for a determination of identity pursuant to Rule 5(c)(3)(D)(ii). The Court reaches this conclusion by reading Rule 5 in conjunction with Rule 5.1, which governs preliminary hearings for felony charges (also known as probable cause hearings). Rule 5(c)(3)(D)(ii) is silent as to the standard to be applied to determine whether the defendant in an action is the same person named in an out-of-district indictment. However, Rule 5(c)(3)(C) provides that if an initial appearance occurs in a district other than where the offense was allegedly committed, "the magistrate judge must conduct a preliminary hearing if required by Rule 5.1" and probable cause is the explicit standard that applies in a preliminary hearing conducted pursuant to Rule 5.1(e). Fed. R. Crim. P. 5(c)(3)(C). Turning to Rule 5.1(e), at a preliminary hearing, the magistrate judge must "find[] probable cause to believe an offense has

6

been committed and the defendant committed it" to require the defendant to appear for further proceedings. Fed. R. Crim. P. 5.1(e); *see also* Fed. R. Crim. P. 5.1(f). True, preliminary hearings and identity hearings are two different proceedings. However, in the context of a preliminary hearing, a defendant may contest that he is the person identified in the complaint, and as a result, argue that there is no probable cause that he committed the crime. Thus, there is sometimes an overlap between the issues in a preliminary hearing and an identity hearing. Accordingly, keeping the same standard in an identity hearing as in a preliminary hearing makes sense and ensures a consistent result. And further, keeping the same standard for defendants charged by complaint and those charged by indictment also makes sense, as there is no discernible reason to impose a different standard – both defendants have been charged through a determination of probable cause, the former by a judicial officer and the latter by a grand jury. Also, while not explicitly stating that probable cause is the standard for an identity hearing in Rule 5.1, the only standard discussed in Rules 5 and 5.1 is probable cause. Accordingly, a reasonable and sensible reading of Rule 5(c)(3)(D)(ii) in conjunction with Rule 5.1(f) leads to a conclusion that probable cause is the standard that should apply to identity hearings.

Additionally, in other preliminary stages of a criminal case, the government is held to a probable cause standard. For example, the government must establish probable cause to believe that the defendant committed the crime alleged in order for a grand jury to return an indictment. *Kaley*, 517 U.S. at 328; *United States v. Schreiber*, 866 F.3d 776, 782 (7th Cir. 2017) ("a grand jury indictment conclusively establishes probable cause."). Rules 4 and 9 expressly require a "probable cause" determination for the issuance of an arrest warrant. *See* Fed. R. Crim. P. 4(a) ("[i]f the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must

issue an arrest warrant [.]"); Fed. R. Crim. P. 9(a) (the court must issue a warrant or summons "for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it."). Similarly, Rule 41(d) provides that a search warrant must issue "if there is probable cause to search for and seize a person or property or to install and use a tracking device." Fed. R. Crim. P. 41(d).

Moreover, at least three other district courts have reached the conclusion that a probable cause standard applies to determine whether a defendant is the same person named in an out-of-district indictment based on similar reasoning. *See Asencio*, 2017 WL 4005636, at *2 (agreeing that the probable cause standard should apply because it is the "same standard that applies in a preliminary hearing conducted pursuant to Rule 5."); *Rodriguez-Torres*, 2014 WL 2320081, at *2 (concluding "that a defendant entitled to a preliminary hearing decided on probable cause should not simultaneously be subject to a determination of identity according to some other (and potentially higher) standard."); *Antoine*, 796 F.Supp.2d at 420 ("the court is hard pressed to believe that the standard for removal pursuant to Rule 5 would be higher than that required for a preliminary hearing, (*see* Rule 5.1(e)), for a grand jury to return an indictment, or for the court to issue an arrest warrant or summons on an indictment or information, (*see* Rule 9(a)).").  Given that the government must demonstrate probable cause in other preliminary criminal proceedings and also Rule 5(c)(3)(C)'s reference to Rule 5.1, which contains an explicit probable cause standard, it is reasonable to expect Rule 5(c)(3)(D)(ii) to explicitly state a different standard of proof if one was required. Therefore, the Court infers that Rule 5(c)(3)(D)(ii)'s silence with respect to the standard of proof further demonstrates that a probable cause standard is the correct approach. [1]

---

[1] The Government notes *United States v. Teju*, 2013 WL 820828, *3 (W.D. La. Mar. 4, 2013), which stated in conclusion that the government had "proved by clear and convincing evidence" that the defendant

**B.      Identity of Names**

The Government also argues, without any analysis, that evidence of identity of names creates a rebuttable presumption of identity. The Government points out that: (1) Defendant identified himself to arresting officers as "Juan Antonio Gallardo Castro," the same name listed in the arrest warrant and Indictment; (2) at the time of his arrest, Defendant had in his possession a Mexican photo identification card that listed "Juan Antonio Gallardo Castro" and included a photograph that depicted the Defendant; and (3) at his initial appearance, Defendant acknowledged that he was Juan Antonio Gallardo Castro. *See* Nov. 3, 2021 Identity Hearing Transcript, Doc. 12 (hereinafter, "Tr.") at 15:3-13, 15:18-23, 16:2-23; Gov't Exs. 4, 5. Because Defendant has the same name as the individual in the arrest warrant and Indictment, the Government claims a rebuttal presumption of identity exists, which Defendant has failed to refute with any evidence or witness. Doc. 14 at 8. In other words, under the Government's view, an identity of names is sufficient to satisfy its burden of establishing probable cause to believe that a defendant is the same person named in the indictment or warrant if the defendant offers no contrary evidence.

The Court rejects the proposed rebuttable presumption of identity from identical names. To begin with, neither the text of Rule 5 nor the Advisory Committee Notes require a defendant to rebut evidence of identity of names and no such rule exists in this Circuit. The Seventh Circuit

---

was the individual identified in the indictment. The Court also notes that in *United States v. Varnes*, 2010 WL 2035573, at *5 (D. Ariz. May 20, 2010), the magistrate judge stated that the government has "sustained its burden of proof by a preponderance of the evidence than the person before the Court is Defendant Jeffrey William Varnes." The Court rejects the suggestion that Rule 5(c)(3)(D)(ii) requires a higher than probable cause standard of proof to apply to the identity determination. Neither *Teju* nor *Varnes* squarely addressed the question of the appropriate standard for evaluating identity under Rule 5(c)(3)(D)(ii). Moreover, for the reasons explained herein, had the drafters of Rule 5(c)(3)(D)(ii) intended a standard of proof higher than probable cause, the Court would expect they would had said so explicitly. For example on a motion for pretrial detention, the government faces an evidentiary burden of establishing by "clear and convincing evidence" that no release condition or combination of conditions will reasonably assure the safety of the community, and that higher burden is expressly required by the text of the Bail Reform Act. *See* 18 U.S.C. § 3142(f)(2)(B).

has previously held that "[i]dentity of name alone does not prove the identity of a person beyond a reasonable doubt" for purposes of establishing a defendant's status as a felon as an element of the crime charged. *United States v. Allen*, 383 F.3d 644, 649 (7th Cir. 2004). Acknowledging a circuit split on the issue, the Seventh Circuit adopted the majority approach and held that a "conviction record containing the defendant's name as the sole source of identification is insufficient to meet the government's burden of proof due to the prevalence of common or identical names." *Id*. at 648 (citing *United States v. Jackson*, 368 F.3d 59, 68 (2d Cir. 2004) (explaining, "[n]ames, of course, vary enormously in commonness, some names being shared by a great many users."); *United States v. Weiler*, 385 F.2d 63, 66 (3d Cir. 1967) ("we cannot agree that the appellant's name is so unusual as to be persuasive even though, as the trial court found, there is a paucity of such names in the Philadelphia telephone directory"); *Gravatt v. United States*, 260 F.2d 498, 499 (10th Cir. 1958) ("It is common knowledge that in many instances men bear identical names.")).

In *Allen*, the defendant David L. Allen showed that the most recent Indianapolis telephone directory had three listings for "David L. Allen," three for "DL Allen," 16 more for "David Allen," and another 10 for "D. Allen." *Allen*, 383 F.3d at 647. Thus, the *Allen* court reasoned that a "conviction record bearing the defendant's name but no other identifying information is insufficient to identify the conviction as the defendant's for purposes of proving felon status." *Id*. at 649.

The issue here is whether identity of names alone establishes a presumption of probable cause to believe that the Defendant is the person named in the out-of-district warrant which the Defendant must rebut. In the Court's view, in making the probable cause assessment as to identity, a rebuttable presumption of identity based on an identity of names is not appropriate for the same

10

reason recognized in *Allen*, the prevalence of common or identical names. The Government's proposed rebuttable presumption rule is problematic because it applies regardless of the commonness of names involved. A name can be identical without there being identity of person. In some cases, the mere fact that a person of the same common name as the defendant is named in the indictment can provide very little support for identity. One recent study of the most common names in the United States noted that there are approximately 20,000 to 30,000 individuals with the names James Smith, Michael Smith, Robert Smith, Maria Garcia, David Smith, Maria Rodriguez, Mary Smith, Maria Hernandez, Maria Martinez and James Johnson.[2] An individual arrested with the name Maria Garcia and named as such in the indictment would face a presumption of identity—but so would the other 27,835 Maria Hernandez's in the United States. In the case of Maria Hernandez, applying a presumption would be nonsensical.[3]

Moreover, an identity of names presumption, which a defendant must rebut, creates a tension with the government's burden in criminal cases. As stated above, in nearly every preliminary proceeding in a criminal case, the government bears the burden of proof by probable cause. Only where a rule or statute explicitly shifts a burden does the defendant bear some responsibility for presenting evidence. *See* e.g. 18 U.S.C. §§ 3142(e)(2)-(3), (f) (the Bail Reform Act creates a "rebuttal presumption" that a defendant is ineligible for bail if he is charged with certain enumerated crimes; defendant bears a burden of production to rebut the presumption). Even though the proposed shift here would presumably be a burden of production (and not necessarily the burden of proof), a shift when not based on an explicit rule or statute places an

---

[2] *See* https://blogs.ancestry.com/cm/calling-james-smith-10-most-common-first-and-surname-combinations

[3] "What's in a name? That which we call a rose by any other name would smell as sweet?" William Shakespeare, Romeo & Juliet, Act 2, Scene 2 (Juliet recognizing that the name Montague is irrelevant as it does not identify the person she loves (Romeo)).

impermissible burden on a defendant who generally has no burden at all in preliminary criminal proceedings. That burden is significant, because it would be before discovery has occurred and is in tension with defendant's Fifth Amendment right not to make statements that would incriminate himself. A defendant, at this early stage of the proceedings, generally has few avenues to discover and present evidence to rebut the government's allegations.

The better approach is simply to permit a court to use the same name as simply one source of evidence in determining whether the government has proved identity by probable cause, without any presumption attached to it. This approach allows a court to consider the commonness of the same names while also leaving the burden on the government. The inference is a permissible—not a mandatory—factual inference that a court may make in deciding whether the defendant is the same individual charged in the indictment. A court should be able to look at all the evidence, weigh it, and draw whatever inference it finds warranted on the facts. The Court is further persuaded that a permissible inference is the correct standard because it does not relieve the government of its burden of establishing probable cause of identity.[4]

Further, the Government cites *Smith v. United States*, 92 F.2d 460, 461 (9th Cir. 1937), for its proposed rebuttable presumption standard. The Court finds *Smith* unconvincing. The *Smith* court stated: "An identity of names is sufficient to create an inference of identity which the petitioner *must* rebut." *Smith*, 92 F.2d at 461 (emphasis added). The *Smith* court cited only to the Ninth Circuit's decision in *Wong v. Esola*, 6 F.2d 828, 829 (9th Cir. 1925), to support its rebuttable

---

[4] The Court acknowledges that a handful of decisions around the country have found a rebuttable presumption of identity from identical names appropriate in the removal context. *Asencio*, 2017 WL 40056365, at *4; *Salana-Beltran*, 37 F.Supp.3d at 1186; *Rodriguez-Torres*, 2014 WL 2320081, at *3; *Teju*, 2013 WL 820828, at *2; *United States v. Martinez-Leon*, 565 F.Supp.2d 1131, 1134 (C.D. Ca. 2008). The Court respectfully disagrees with each of these decisions for the reasons stated above.

presumption of identity rule. But *Wong*—in addition to being non-binding on this Court—does not appear to stand for the presumption rule advanced in *Smith*.

In *Wong*, the Ninth Circuit stated only that an "*inference* of identity of person *may* be drawn from identity of name." 6 F.2d at 829 (emphasis added). This language from *Wong* is consistent with the Court's conclusion that an identity of names may give rise to a permissible inference. Additionally, and importantly, the *Wong* court did not state that the identity of names creates a presumption of identity that a defendant *must* rebut, which is the proposition for which *Smith* cites it. Furthermore, the reference to a rebuttable presumption in *Smith* was unnecessary because the court did not rely exclusively on the unrebutted identity of names. The *Smith* court went on to rely on facts beyond the mere identity of names, including testimony of an agent and the location of petitioner at the time of the arrest, which it held "strengthen[ed] the inference and fully justifie[d]" the petitioner's removal to California. *Smith*, 92 F.2d at 461. Beyond the mere identity of names, the *Wong* court also relied on additional evidence relating to a telegram that petitioner received to show that the petition was the person named in the indictment. *Wong*, 6 F.2d at 829.

Similarly here, the Government did not rely only on the same name evidence. To prove that Defendant is the person named in the indictment and arrest warrant, the Government relied on the testimony of the case agent, Special Agent Garrison, and the arresting officer, Task Force Officer Healy, as well as a photograph from a U.S. visa record for Juan Antonio Gallardo Castro taken in approximately 2016, a Mexican identification card that included a photograph of the Defendant and listed his name as "Juan Antonio Gallard Castro" that was recovered from Defendant at the time of his arrest, and Defendant's booking photograph from October 27, 2021 as well as wiretap and other electronic evidence. Accordingly, for the reasons stated above, the Court declines the government's invitation to apply a rebuttable presumption in this case.

### C. Evidence in Support of Identity

Applying the probable cause standard, the Court proceeds to evaluate the evidence presented at the identity hearing. "Probable cause is not a high standard." *United States v. Scheck*, 3 F.4th 943, 946 (7th Cir. 2021). "In the context of an identity hearing, probable cause exists 'if the law enforcement official, on the basis of the totality of the circumstances has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing' that the defendant is the person named in the out-of-district warrant or indictment." *Rodriguez-Torres*, 2014 WL 2320081, at *3 (quoting *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004)). "The sole purpose of [an identity] hearing is to determine whether the person arrested is the person wanted in the other district. It is not a merits hearing." *Asencio*, 2017 WL 4005636, at *2.

At the identity hearing, Special Agent Garrison testified that he is a case agent involved in a cocaine trafficking investigation in the Eastern District of Tennessee. Tr. 22:19-23:1. The Indictment filed on October 26, 2021 arose out of the same cocaine trafficking investigation. Tr. 22:19-24:5. Agent Garrison testified that he was familiar with Juan Antonio Gallardo Castro's physical appearance from his photograph in his United States visa record, which is Government Exhibit 3. Tr. 24:9-13, 25:13-18; Gov't Ex. 3. Special Agent Garrison testified that he believed the photograph in Government Exhibit 3 was taken in approximately 2016. Tr. 41:11-13.

Special Agent Garrison also testified that prior to charging, the Juan Antonio Gallardo Castro charged in the Indictment was identified by a cooperating source ("CS") involved in the conspiracy. Tr. 26:18-27:11, 37:16-19. Agent Garrison showed the unlabeled photograph in Government Exhibit 3 to the CS, and the CS identified the individual as a participant in the cocaine trafficking conspiracy whom the CS knew as "Johnny." Tr. 26:18-27:2. Agent Garrison testified that the CS had direct contact with Juan Antonio Gallardo Castro relating to conduct charged in

the Indictment during the time period of the conspiracy charged in the Indictment. Tr. 27:3-12, 32:25-33:21, 36:11-17, 42:12-14.

Additionally, Agent Garrison testified that investigators intercepted, via Court-authorized wiretaps, multiple telephone calls with a Mexican telephone number that related to the conspiracy charged in the Indictment. Tr. 29:8-22. According to Agent Garrison, this same Mexican telephone number was also identified on toll records of telephone numbers of others involved in the conspiracy. Tr. 29:8-14, 49:16-50:2. The Mexican phone number was linked to Juan Antonio Gallardo Castro through United States visa information for a minor child. Specifically, the Mexican telephone number was associated with the minor child's United States visa records, and the same visa records listed the child's father as Juan Antonio Gallardo Castro. Tr. 27:21-28:19. Agent Garrison testified that the child's visa records included a photograph of Juan Antonio Gallardo Castro which is the same photograph as the Government's Exhibit 3 and the same photograph the CS identified as "Johnny." Tr. 28:20-29:2. The child's visa record also listed Juan Antonio Gallardo Castro's date of birth. Tr. 29:3-7.

Agent Garrison testified that the same Mexican phone number that is associated with the child's visa record was intercepted on wires as part of this investigation and those conversations related to the conspiracy charged in the Indictment. Tr. 46:21-47:6. Agent Garrison further testified that investigators intercepted pertinent calls with a domestic telephone number subscribed to "Juan Gallardo." Tr. 39:15-20. Spanish-language linguists translating the intercepted calls identified the person on the Mexican telephone number as the same person speaking on the domestic telephone number subscribed to "Juan Gallardo." Tr. 39:21-25. Agent Garrison stated that the individual using both telephone numbers associated with Mr. Gallardo was referred to as "Johnny," the name the CS used for Juan Antonio Gallardo Castro. Tr. 40:4-10.

15

Finally, Agent Garrison testified that the same Mexican telephone number was associated with a WhatsApp account that was located in the Eastern District of Tennessee around the same time as the criminal activity, and in the Northern District of Illinois through IP addresses used by the phone to access the WhatsApp account. Tr. 30:1-17, 34:6-35:2. As part of his investigation, Agent Garrison also reviewed border crossing information which showed Juan Antonio Gallardo Castro in the United States during the period of the conspiracy charged in the Indictment. Tr. 45:11-17. Agent Garrison further testified that in September 2021, the WhatsApp account was most commonly accessed using an IP address linked to an Extended Stay hotel in the Chicago area. Tr. 30:1-16, 47:18-23. Agent Garrison added that this information was used by law enforcement to surveil and locate Defendant in the Chicago area in or about September 2021, which led to Defendant's apprehension and arrest on October 27, 2021. Tr. 30:1-25, 47:7-48:4. Agent Garrison testified that at the time of his arrest, Defendant had a phone that had a Mexican telephone number, but he did not know the telephone number for that phone. Tr. 48:16-24.

On cross-examination, Agent Garrison stated that: (1) law enforcement agents did not observe Defendant distributing or possessing cocaine in the Eastern District of Tennessee; (2) the CS provided only historical information to the investigators after the fact; (3) after being interviewed by investigators, the agents did not have the CS do any phone or drug transactions with Defendant; and (4) the investigators did not ask the CS to confirm that the voice of the individual on the intercepted phone calls was the individual the CS knew as Johnny. Tr. 34:4-5, 36:20-23, 37:20-23, 38:2-13, 38:16-19, 39:1-6, 40:11-13.

Task Officer Healy also testified at the identity hearing. Officer Healy testified that he and members of his team arrested Defendant on October 27, 2021. Tr. 5:10-17. Prior to Defendant's arrest, Officer Healy received records from Special Agent Garrison, including a copy of the arrest

16

warrant (Gov't Ex. 1), Indictment (Gov't Ex. 2), and a photograph of Juan Antonio Gallardo Castro labeled with his name (Gov't Ex. 3). Tr. 7:3-14, 9:21-10:11, 11:13-12:6, 12:23-13:4. Officer Healy testified that at the time of the October 27, 2021 arrest, Defendant identified himself as "Juan Antonio Gallardo Castro" and had in his wallet a Mexican identification card with the name "Juan Antonio Gallardo Castro, the same date of birth for Juan Antonio Gallardo Castro included in the child's visa record, and a photograph depicting Defendant. Tr. 16:1-17:4, 13:14-15:23. During the identity hearing, Officer Healy identified Defendant as the individual he arrested on October 27, 2021. Tr. 6:5-20.

The Court finds that the Government has presented credible evidence establishing probable cause to believe that Defendant is the same person named in the Indictment as well as the arrest warrant. The CS had direct contact with Juan Antonio Gallardo Castro relating to conduct charged in the Indictment and the CS identified the visa record photograph in Government Exhibit 3 as "Johnny," the man the CS had direct contact with in the Eastern District of Tennessee as part of the charged conspiracy. Defendant has offered no evidence to suggest that he is not the Juan Antonio Gallardo Castro named in the indictment. Rather, Defendant's brief is focused solely on the reliability of the CS's identification of Defendant. *See* Doc. 17. That is a valid point, as the Court heard very little during the hearing about the reliability of the CS, or even (and rather ironically) the identity of the CS. Nevertheless, the Government's proof of identity is not based solely on what the CS told investigators.

*First*, there is an exact match of Defendant's name with the individual named in the arrest warrant and Indictment. At the time of his arrest, Defendant identified himself to arresting officers as "Juan Antonio Gallardo Castro," the same name listed in the arrest warrant and Indictment. Defendant also had in his possession a Mexican photo identification card that listed the same name

17

and included a photograph of Defendant. The Mexican identification card had the same date of birth as the Juan Antonio Gallardo Castro in the photograph included in the child's visa records (Exhibit 3). Moreover, at his initial appearance, Defendant acknowledged that he was Juan Antonio Gallardo Castro. *Second*, the Court finds that the photograph in Government Exhibit 3 appears to be the Defendant based on personal observation. *Third*, the same photograph and visa record for Juan Antonio Gallardo Castro is associated with a Mexican phone number via the minor child's United States visa information which lists the child's father as Juan Antonio Gallardo Castro and also listed Juan Antonio Gallardo Castro's date of birth. *Fourth*, the same Mexican phone number that was associated with the child's visa record was intercepted on wiretaps as part of this investigation and those discussions related to the charged cocaine trafficking conspiracy. *Fifth*, Spanish-language linguists matched the voice of the person using the Mexican phone number to the voice of the person using a domestic telephone number registered to "Juan Gallardo," and the person using those telephone numbers is referred to as "Johnny" on the wires. *Sixth*, both the Mexican telephone number and the domestic telephone number subscribed to Mr. Gallardo were intercepted over the other target phones that law enforcement was monitoring. *Seventh*, the Mexican telephone number's location information (based on IP addresses used to access an associated WhatsApp account) placed the telephone user in the Eastern District of Tennessee during the time frame of the conspiracy and in the Chicago area. *Eighth*, the Mexican telephone number and the Chicago-area IP information were used to locate Defendant and led to his arrest on October 27, 2021. *Ninth*, the border crossing records for Juan Antonio Gallardo Castro confirm that he was in the United States during the relevant part of the conspiracy.

      Though not overwhelming, all of this evidence together is enough to satisfy the probable cause standard. The evidence shows there is a fair probability that Defendant used two telephone

numbers linked to him to carry out the conspiracy and that one of those telephone numbers led to his arrest in the Northern District of Illinois. Combined with evidence of the identical name of Defendant and the person charged in the Indictment, and the CS's identification of Defendant as an individual involved in the conspiracy, there is a fair probability, based on the totality of the circumstances, that Defendant is the Juan Antonio Gallardo Castro named in the Indictment and thus the Government has sufficiently proven identity. Therefore, Defendant is subject to removal to the Eastern District of Tennessee.

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant is the person charged in the Eastern District of Tennessee Indictment and named in the corresponding arrest warrant. Defendant shall be removed in the custody of the U.S. Marshal to the Eastern District of Tennessee.

**SO ORDERED.**

Dated: December 16, 2021

                                                Sunil R. Harjani
                                                United States Magistrate Judge